# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

GHISSO FANI-SAISON,                          CV 04-927-BR

            Plaintiff,                       OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of
Social Security,

            Defendant.


**PHYLLIS BURKE**
4370 N.E. Halsey Street
Portland, OR  97213
(503) 460-3200

        Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1028

**LUCILLE GONZALES MEIS**
Regional Chief Counsel, Seattle, Region X
**RICHARD A. MORRIS**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2156

        Attorneys for Defendant

**BROWN, Judge.**

        Plaintiff Ghisso Fani-Saison seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's protective application for Supplemental Security Income (SSI) benefits.

        This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough and careful review of the record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** for the payment of benefits.


<u>**ADMINISTRATIVE HISTORY**</u>

        Plaintiff filed her application for SSI on February 16, 1999.  The application was denied initially and on reconsideration.  A hearing was held on May 30, 2000.  On November 20, 2000, an Administrative Law Judge (ALJ) issued a decision denying Plaintiff's claim.  On May 10, 2002, the ALJ's decision was vacated by the Appeals Council because it was not

supported by substantial evidence.  On remand, the Appeals Council ordered the ALJ to evaluate further Plaintiff's mental impairments and subjective complaints and to give additional consideration to reports of treating and examining physicians.

Two additional hearings were held on remand.  Plaintiff was represented by an attorney at both hearings.  At the hearing on December 18, 2002, Plaintiff and a medical expert testified.  At the hearing on March 13, 2003, a vocational expert (VE) testified.  A language interpreter for Plaintiff was also present at all three hearings.

The ALJ issued a second decision on June 16, 2003, in which he again found Plaintiff was not entitled to benefits.  That decision became the final decision of the Commissioner on May 20, 2004, when the Appeals Council denied Plaintiff's request for review.


## BACKGROUND

### I.    Plaintiff's Testimony

Plaintiff was born on July 3, 1963, and was 39 years old at the time of the last hearing.  Tr. 76.  She is a native of Iran and completed high school in that country.  Plaintiff came to the United States as a refugee in 1998, after spending two years in a refugee camp in Pakistan.  Tr. 470-71.  She has no past relevant work.  Tr. 88.

On her application for benefits, Plaintiff listed severe
fibromyalgia and her severely limited ability to sit, stand, or
lie down for long periods, and her need to constantly change her
position as reasons for her inability to work.  Tr. 87.  At the
hearing on May 30, 2000, Plaintiff testified she has severe pain
in her back, especially at night.  Tr. 472.  Sometimes she cannot
hold her arms up or even hold a telephone.  Her body is very
stiff and she cannot bend her knees.  Her doctor prescribed
methadone to treat her pain but she stopped taking it because it
made her itch and feel strange.  Tr. 475-76.  She testified she
has been depressed since her husband died in 1995, and her
depression has worsened.  Tr. 480.  She does not receive regular
mental health counseling because she does not know of any
counselors who speak Farsi.  Tr. 481.

On a typical day, Plaintiff wakes at 6:00 a.m. with severe
pain. Tr. 481.  It takes her an hour to get out of bed.  She goes
to the living room and lies on the couch.  She takes her
medications with some tea and lies down again.  Tr. 481.  She
rarely attends church because it is painful for her to sit for
very long.  Tr. 483.  She does not sleep very well because of her
pain and because she worries.  Tr. 484.  She has trouble
remembering things and her children have to remind her to take
her medications.  Tr. 486.

Plaintiff also suffers from panic attacks which last 15-20

minutes and may occur once each week.  Tr. 487-88.

Plaintiff testified she lived with her parents, her sister, her two brothers, and her two teen-aged sons.  Tr. 473.  Her 18-year-old sister, Samira Sian, testified at the May 30, 2000, hearing.  Tr. 490.  Sian testified Plaintiff hurts more now than she did in Iran.  Tr. 492.  She cannot sit for very long and has to move around all the time.  Sian also testified Plaintiff is not a normal housewife and mother.  Although she can take care of "her own personal things," she cannot help her children clean their room and can do very little around the house.  Tr. 498.

At the hearing on December 18, 2002, Plaintiff testified she has pain everywhere, she cannot sleep for more than three hours because of the pain and due to worrying.  Tr. 519-20.  She can walk slowly for 15 minutes and can sit for a half hour if she really pushes herself.  Tr. 524.  Without pushing, she can sit for only 10-15 minutes before she must stand.  After two hours, she must lay down.  Tr. 524.  Plaintiff testified her sister does most of her cooking and her sons do the household chores.  Tr. 524-25.  She spends most of her day watching television or reading.  Tr. 526.  Plaintiff also testified she is sad and cries three times per week and cannot stop crying.  She also has panic attacks once or twice each week.  Tr. 527.

## II. Medical Evidence

Except when noted below, Plaintiff does not challenge the

ALJ's summary of the medical evidence.

After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence as set forth in both decisions. *See* Tr. 15-25, 30-36.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a

number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the

testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(f)(1).

## II.  **The ALJ's Decision**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since the onset of her alleged disability.  Tr. 16.

At Step Two, the ALJ found Plaintiff has the following impairments that are considered severe under the regulations: fibromyalgia, depressive disorder, panic attack disorder, and somatoform pain disorder.  Tr. 16.

At Step Three, the ALJ found Plaintiff's mental and physical impairments do not meet or medically equal any of the presumptively disabling conditions in the Listing of Impairments in Appendix 1, subpart P, Regulation No. 4.  Tr. 17.

The ALJ determined Plaintiff retained the RFC to perform a modified range of light work with the following physical and mental limitations:  She can lift up to 20 pounds occasionally and 10 pounds frequently.  She can stand/walk two hours in an eight-hour work day and sit for six hours in a work day.  She has moderate limitations in understanding, remembering, and carrying out detailed instructions; in maintaining extended concentration and attention; in sustaining an ordinary routine without special

supervision; in completing a normal work day and work week
without interruptions; in asking simple questions; and in
interacting with supervisors and co-workers.  Tr. 23.

At Step Four, the ALJ found Plaintiff cannot return to any
former employment.  Tr. 23.

At Step Five, the ALJ found Plaintiff retains the RFC to
perform work in a significant number of jobs despite her
impairments.  Tr. 24.  The ALJ relied on testimony from the VE,
who opined a person of Plaintiff's age, education, and RFC could
perform the jobs of light assembler, parking-lot cashier, laundry
folder, and eyeglass polisher.  Tr. 24.

Accordingly, the ALJ concluded Plaintiff was not disabled at
any time through the date of the ALJ's decision.  Tr. 24.


## DISCUSSION

Plaintiff contends the ALJ erred at Step Three of the
sequential analysis when he found Plaintiff's impairments do not
meet or equal a listed impairment and at Step Five when he found
Plaintiff retained the RFC to perform work that exists in
significant numbers in the economy.  Specifically, Plaintiff
asserts the ALJ erred when he:  (1) improperly rejected
Plaintiff's testimony regarding her symptoms and limitations,
(2) improperly rejected medical source opinions, and (3) failed
to incorporate all of Plaintiff's physical and mental limitations

in his assessment of Plaintiff's RFC and in the vocational
hypothetical upon which the ALJ relied.

## I. The ALJ Erred When He Rejected Plaintiff's Testimony Regarding the Severity of Her Limitations.

Plaintiff argues the ALJ erred when he failed to provide
clear and convincing reasons for rejecting virtually all of
Plaintiff's testimony concerning her impairments.  The ALJ
stated:

> The claimant thought that she could walk for
> 15 minutes or so, sit for 10-15 minutes
> comfortably and no more than 30 minutes, and
> she needed to lie down every two hours.
>
> * * *
>
> Here, the claimant's statements concerning
> her impairments and their impact on her
> ability to work are not entirely credible in
> light of the medical reports and other
> evidence of record.

Tr. 17.  The ALJ did not address Plaintiff's testimony that she
cannot lift her arms or bend her knees and has difficulty with
her memory.  The ALJ did not specifically identify the part of
Plaintiff's testimony that he rejected, but he instructed Larry
Hart, Ph.D., the medical expert who testified at the December 18,
2002, hearing, to ignore all of Plaintiff's testimony when he
evaluated Plaintiff's medical record.

When evaluating a claimant's testimony regarding subjective
symptoms, the ALJ must perform a two-step analysis.  First the
ALJ must determine whether the claimant has produced objective

medical evidence of an underlying impairment that could
reasonably be expected to produce the symptoms alleged.
20 C.F.R. §§ 404.1529(a), 416.929(a). *See also Smolen v. Chater*,
80 F.3d at 1281-82; *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th
Cir. 1986). The threshold test requires only a reasonable
inference that the medically-shown impairment could cause the
subjective symptom. *Smolen*, 80 F.3d at 1282. The claimant need
not show his impairment reasonably could be expected to cause the
severity of the symptom he alleges but only that the impairment
reasonably could have caused some degree of the symptom. *Id.*
*See also Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989).

If there is medical evidence that meets this threshold and
no affirmative evidence of malingering, the second part of the
analysis requires the ALJ to assess the credibility of the
claimant regarding the severity of symptoms. The ALJ can reject
the claimant's testimony about her limitations only by offering
clear and convincing reasons supported by specific facts in the
record that demonstrate an objective basis for his disbelief.
*Regennitter v. Comm'r*, 166 F.3d at 1296-97. See also *Lester v.
Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12
F.3d at 918. General findings are insufficient. *Lester*, 81 F.3d
at 834. The ALJ must identify specific testimony that is not
credible and offer specific, cogent reasons for disbelieving it.
*Id. See also Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.

1990); *Dodrill*, 12 F.3d at 918.

The record contains objective medical evidence that Plaintiff suffers from fibromyalgia and depression for which her physicians have prescribed medication. Plaintiff has been evaluated at a pain-management clinic, has received physical therapy, and has participated in group therapy for her depression.

The ALJ did not specify any affirmative evidence of malingering in the record. Indeed, at the May 30, 2000, hearing, Lawrence Cohen, M.D., a medical expert, testified he did not believe Plaintiff was malingering. Having found objective medical evidence of an underlying impairment and no affirmative evidence of malingering, the ALJ was required to assess Plaintiff's credibility based on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . The ALJ must also consider the claimant's work record and the observations of treating and examining physicians and other third parties.

*Smolen*, 80 F.3d at 1284 (citations omitted). The ALJ must apply these factors when he sets forth the reasons for discrediting a claimant's testimony. The Ninth Circuit also requires the ALJ to

"state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. He must offer specific, "clear and convincing" reasons for rejecting the claimant's testimony about the severity of symptoms. *Id.* The ALJ cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. *Cotton v. Bowen*, 799 F.2d at 1407. *See also* SSR 96-7p.

The ALJ gave the following explanation for finding Plaintiff's testimony not entirely credible:

> Based on a review of the file, the medical records do not appear to fully support the claimant's statements about her symptoms and limitations. While she no doubt has some limitations, other factors raise a question about the full scope of her limitations.
>
> * * *
>
> Despite the allegations of symptoms and limitations that would prevent all work, the claimant testified that she went on a vacation trip to Vancouver for a few days, and she took at least one trip to the Oregon Coast with her support group. Although trips of this nature and a disability are not mutually exclusive, this tends to suggest that the claimant's alleged limitations have been somewhat overstated.

Tr. 22. The ALJ also noted evidence in the record that Plaintiff could do some light housework, occasionally walk to the store, and manage her personal care undermined Plaintiff's credibility. The ALJ also noted a single report from March 1999 in which an

interviewer with the Department of Disability Services (DDS) reported Plaintiff "had no difficulties a [*sic*] need to stand and move about." The ALJ also noted that even though Plaintiff asserts she cannot speak English, the record contains some evidence that she "is capable of communicating in English very well."

In addition, the ALJ apparently intended to incorporate findings from his November 20, 2000, decision regarding Plaintiff's credibility. In that decision, the ALJ found Plaintiff's credibility was undermined (1) by the fact that, in order to complete her emigration to the United States as a refugee, she completed a form that stated she did not "have a physical defect, disease or disability affecting [her] ability to make a living," and (2) by the report of a physical examination performed in Rawalpindi, Pakistan, that also noted "no apparent defect, disease or disability." Although the ALJ noted these statements were made when Plaintiff "was quite desperate to leave the camp and gain admission to the United States," he, nonetheless, concluded "she was either lying then or she is lying now."

The Court finds the ALJ's explanation for rejecting Plaintiff's testimony is neither clear nor convincing and does not meet the requirements of *Smolen*.

The Court finds the ALJ erred to the extent he rejected

Plaintiff's testimony because it is not fully supported by medical evidence. Medical evidence is not necessary to document the severity and nature of a claimant's symptoms. *See Smolen*, 80 F.3d at 1281.

In addition, the Court finds Plaintiff's testimony concerning her trips to Vancouver and the Oregon coast do not constitute clear and convincing evidence that her testimony concerning her symptoms is not credible. Plaintiff testified she traveled in a van for both trips and was able lie down periodically. In addition, Plaintiff's trip to Vancouver was for the purpose of attending the funeral of a relative rather than a vacation as the ALJ stated. The Court finds the fact that Plaintiff was able to participate in these isolated trips does not undermine her testimony regarding her physical and mental limitations.

The evidence that Plaintiff can do some light housework, occasionally walk to the store, and manage her personal care also is not inconsistent with Plaintiff's own testimony concerning her limitations. Plaintiff's limited abilities do not establish that Plaintiff is able to work at even a sedentary job for eight hours a day, five days a week.

In addition, the March 1999 report of the DDS interviewer does not support the ALJ's finding as to Plaintiff's credibility. Contrary to the ALJ's conclusion, the interviewer states

Plaintiff "had to stand and move around quite a bit – rubbed her back a lot." Numerous reports in the record contain similar comments about Plaintiff's inability to sit for very long. The transcripts of both the May 2000 hearing and the December 2002 hearing also reveal Plaintiff asked permission to stand and to move around during her testimony.

The ALJ's suspicions regarding Plaintiff's English fluency also do not support his credibility finding. The record is replete with evidence that Plaintiff cannot speak English with any fluency. She required the assistance of interpreters at most, if not all, of her medical examinations as well as at the hearings conducted in this matter. The ALJ also acknowledged Plaintiff is illiterate in English. The fact that Plaintiff speaks some English after having lived in the United States since 1998 is not inconsistent with her need for an interpreter to ensure her complete understanding of the proceedings in this matter nor is it evidence that undermines her credibility.

Finally, the Court finds Plaintiff's checkmark on the immigration form does not constitute clear and convincing evidence that Plaintiff lacks credibility. The form was completed long before Plaintiff sought disability benefits, and there is not any evidence in the record that her statement was anything but true at the time it was made.

Accordingly, the Court concludes the ALJ erred when he

rejected Plaintiff's testimony.

When an ALJ improperly rejects a claimant's testimony regarding the claimant's limitations and the claimant would be deemed to be disabled if her testimony were credited, the court "will not remand solely to allow the ALJ to make specific findings regarding that testimony." *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988) (*Varney II*). Under those circumstances, the court must credit the claimant's testimony as a matter of law. *Id*. *See also Lester*, 81 F.3d at 834. Accordingly, the Court credits Plaintiff's testimony as a matter of law.

## II. The ALJ Erred When He Rejected the Opinion of Plaintiff's Treating Physicians.

Plaintiff asserts the ALJ erred when he effectively rejected the opinions of several of Plaintiff's treating physicians, including Cynthia Talbot, M.D.; Ariel Neis, M.D.; Pam Edwards, M.D.; and Larry Sparr, M.D. Indeed, the ALJ managed to reject the opinions of almost every physician who treated or examined Plaintiff in favor of the opinion of the medical expert who testified at Plaintiff's penultimate hearing on December 18, 2002.

The following physicians opined Plaintiff is unable to perform any kind of full-time work due to the chronic pain caused by fibromyalgia and/or the symptoms caused by depression: Dr. Talbot, Dr. Neis, Dr. Edwards, Dr. Sparr, and Dr. DeVoe. In

addition, Melissa Sutherland, a rehabilitation counselor; Behjhat
Sedighi, a mental health counselor; and Nancy Gordon-Zwerling, a
family nurse practitioner, concluded Plaintiff was unable to
work.  A careful review of the ALJ's decision reveals he rejected
all medical opinions except those of Erin Mueller, Ph.D., and
John Crossen, Ph.D., who examined Plaintiff once at the request
of DDS, and Dr. Hart, the medical expert who testified at the
December 2002 hearing.  Dr. Hart is a psychologist who did not
examine or treat Plaintiff.

Dr. Edwards became Plaintiff's treating psychiatrist in July
2002.  On August 16, 2002, Dr. Edwards completed a questionnaire
prepared by Plaintiff's counsel.  Dr. Edwards's current diagnoses
were major depression and post-traumatic stress disorder.
Dr. Edwards also reported Plaintiff was "chronically
decompensated"; was moderately limited in the activities of daily
living; had marked difficulties in maintaining social
functioning; and had marked difficulties in maintaining
concentration, persistence, or pace.  On August 18, 2002, Dr.
Edwards prepared an "Assessment of Ability To Do Work-Related
Activities."  She noted Plaintiff was "seriously limited" in her
ability to follow work rules, relate to co-workers, deal with the
public, interact with supervisors, function independently, and
maintain attention and concentration.  Dr. Edwards also found
Plaintiff's ability to deal with work stresses and to understand,

to remember, and to carry out complex job instructions were "poor-none."  Additionally, Dr. Edwards noted Plaintiff was seriously limited in her ability to understand, to remember, and to carry out "detailed, but not complex, job instructions" as well as simple job instructions, and in her ability to behave in an emotionally stable manner.  Dr. Edwards noted Plaintiff "is impaired by severe depression – psychomotor retardation, decreased concentration, . . . depressed mood, sadness, no energy."  On April 8, 2003, Dr. Edwards updated her report.  She concluded Plaintiff's condition had not improved in spite of Plaintiff's participation in a mental-health support group and "multiple psychotropic medications."

The ALJ admits Dr. Edwards's reports support a finding that Plaintiff's condition "meets a listed impairment; certainly that she is disabled."  The ALJ, however, found Dr. Edwards's assessments were "not persuasive" because they do not include specific clinical findings, they appear in check-box forms with only generalized complaints, they are contradicted by the OHSU treatment notes that show Plaintiff "functioning pretty well in her group setting," and they are not supported by objective evidence.  In addition, the ALJ credited Dr. Hart's testimony in which he disagreed with Dr. Edwards's assessments because the records show Plaintiff "presented generally with good hygiene, which indicated a capacity for daily living activities."  In

addition, Dr. Hart believed the Mueller-Crossen report would not support the functional limitations asserted by Dr. Edwards.

It is well-settled that "greater weight is afforded to the opinion of a treating physician than to that of [a] non-treating physician, because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)(internal quotations omitted).  The ALJ must give "specific, legitimate reasons" for rejecting a treating physician's opinion if that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The Court finds the ALJ's reasons for rejecting Dr. Edwards's opinion do not meet this standard.

Dr. Edwards is Plaintiff's treating psychiatrist.  She met with Plaintiff at least six times.  Her opinion is based on her repeated opportunities to examine and to interview Plaintiff personally.  Dr. Hart, on the other hand, simply reviewed Plaintiff's medical records.  Dr. Hart's conclusions, which he admitted were drawn from a review of records he considered incomplete and contradictory, are not a legitimate substitute for the opinion of a treating physician who has had multiple opportunities to examine and to treat the Plaintiff.

Drs. Mueller and Crossen examined Plaintiff once in 1999 (three years before Dr. Edwards started treating Plaintiff).

Their evaluation included the Beck Depression Inventory, a
clinical interview, a mental status examination, and a review of
Plaintiff's medical records. Drs. Mueller and Crossen diagnosed
Plaintiff with a major depressive disorder as well as a pain
disorder. They assessed Plaintiff's Global Assessment of
Functioning (GAF) at 52.[1] They noted clinical impairments of
altered sleep (severity = distressing), dysphoric mood (severity
= destabilizing), somatization (severity = distressing), and
suicidal thought (severity = destabilizing). The ALJ gave "a
fair degree of weight" to the report of Drs. Mueller and Crossen
because he concluded it was the only assessment in the record
that was supported by objective testing. Their report, however,
does not contradict Dr. Edwards's opinion.

The ALJ's assertion that Dr. Edwards's opinion is
contradicted by the OHSU treatment notes also is not a legitimate
reason to reject her opinion. The treatment notes reflect only
that Plaintiff was able to participate appropriately in group
therapy.

_____

[1] The GAF scale is used to report "the clinician's judgment
of the individual's overall level of functioning." *Diagnostic
and Statistical Manual of Mental Disorders IV* (DSM IV) 30 (4th
ed. 1994). The GAF scale is used to rate only psychological,
social, and occupational functioning and not impairments due to
physical limitations. *Id.* A GAF of 51-60 reflects "[m]oderate
symptoms (e.g., flat affect and circumstantial speech, occasional
panic attacks) OR moderate difficulty in social, occupational, or
school functioning (e.g., few friends, conflicts with peers or
co-workers)." *Id.* at 32 (emphasis in original).

The ALJ's conclusion that Plaintiff's ability to maintain acceptable hygiene also does not contradict Dr. Edwards's assessment of Plaintiff's abilities. Indeed, Dr. Edwards agreed Plaintiff's ability to maintain her personal appearance was good and noted "[p]atient is polite and maintains personal hygiene, but often depressed, sad, tearful."

In summary, the Court finds the ALJ erred when he rejected Dr. Edwards's opinion. When "the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Accordingly, the Court credits Dr. Edwards's opinions as set forth in the August 18, 2003, and April 8, 2003, questionnaires.

### III. Remand for an Award of Benefits Is Required

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *See id.* at 1178 n.2.

The Court has determined the ALJ erred when he rejected Dr. Edwards's opinion.  The ALJ acknowledged Dr. Edwards's opinion supports a finding that Plaintiff meets a listed impairment and is disabled.  After giving the evidence the effect required by law, the Court finds Plaintiff cannot work on a regular and continuing basis and is disabled.  No issues, therefore, remain to be resolved.

Accordingly, the Court concludes this matter should not be remanded for further proceedings.  *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000).  *See also Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998)("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Accordingly, the Court remands this matter for the purpose of permitting the Commissioner to calculate and to award benefits to Plaintiff.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 15th day of July, 2005.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge